[L.A. No. 27308.   In Bank.   Jan. 25, 1966.]

APPLE VALLEY RANCHOS WATER COMPANY, Plaintiff and Appellant, v. COUNTY OF SAN BERNARDINO, Defendant and Respondent.

Ball, Hunt & Hart and Clark Heggeness for Plaintiff and Appellant.

Stanford D. Herlick, County Counsel, Robert R. Walker, Deputy County Counsel, and Robin S. Heyer for Defendant and Respondent.

BURKE, J.—Plaintiff water company appeals from (1) an order denying its motion to vacate findings and order of the board of supervisors of defendant county, which fixed the assessed valuation of plaintiff's water distribution lines, and (2) an order refusing to set the matter for retrial. As will appear, plaintiff has failed to establish error in the proceedings below. The orders appealed from will accordingly be affirmed.

Plaintiff owns a water distribution system, including pipelines extending through land subdivided into some 9,000 building lots, of which only about 935 were occupied and served by plaintiff during the taxable years here involved (1958-1959; 1959-1960). For some reason, perhaps because of the physical distribution of the users' homes, the entire pipeline system was in service. The lines had been installed by the subdivider at a cost to it of nearly 1.5 million dollars, and at a cost to plaintiff of an additional $78,320. In 1958 the assessed valuation of the pipelines and service connections as set by the assessor was $165,470, and in 1959 it was $167,780.[1] Over plaintiff's protests and requests for reduction for each of the two years, the board of supervisors upheld the valuations. Plaintiff then paid the taxes under protest, and brought this action to recover them.

As shown at the trial, the valuation method employed by the assessor was this: Historical cost of the pipelines was first established, and then reduced for depreciation at the rate of $2\frac{1}{2}$ percent per year; because of "low customer density" a "limited-use factor" of 50 percent was then applied to 80 percent of the depreciated cost and the resulting figure was added to the other 20 percent of depreciated cost to reach the appraised market value; to this market value the "equalization factor" of 25 percent was applied to produce the assessed valuation of the pipelines and service connections (see fn. 1, *ante*). The effect of applying the 50 percent "limited-use factor" to 80 percent of the depreciated cost was equivalent to reducing such cost by 40 percent.

The Public Utilities Commission (PUC) is authorized to fix plaintiff's water rates, but had not yet done so. During the two years in question the rate at which plaintiff sold

---

[1] The assessments were made at 25 percent of market value. Thus the market value found for the two years was $661,880 and $671,120, respectively.

water to consumers was substantially less than the rate charged by a comparable water company (Hesperia). In fixing rates, the PUC in practice allows as the rate base upon which the reasonable return to the company is to be computed, only that proportion of the cost of a system represented by the proportion of actual users to the total potential; i.e., the PUC does not permit the imposition of an undue burden upon actual consumers in order to provide a return on cost of the entire system, nor (in fixing rates) does it allow as an operating cost the proportion of taxes paid on the value of that part of the total system not serving users.

The trial court found that the assessments for the two years were "arbitrary, erroneous, invalid, unfair, unlawful and an abuse of discretion"; that the board should have reduced or equalized the assessments; that "Among other matters, said Assessor and said Board used an improper method of valuation." Judgment was entered July 18, 1962, canceling the assessments and ordering the board to reassess and equalize the property "using a proper method of valuation," and further decreeing that plaintiff is entitled to judgment for the difference between the taxes paid and those found due after reassessment, that the court "shall retain jurisdiction of this action to make such orders as may be necessary or appropriate," and that plaintiff recover costs of $345.25. Neither the findings nor the judgment fixed or suggested the, or any, "proper method of valuation" to be "used."

In August 1962 the board of supervisors held a hearing, received evidence, and again fixed the equalized assessed valuations of the property for the two years at the same amounts as before.[2]

[2]The board's minutes, which set forth its written findings of fact, recite that (paragraph IV) the board considered earning power, present and anticipated; that in determining present earning power the board considered the relevant evidence concerning actual past earnings, rate-making practices of the PUC, comparative water rates of comparable water systems, consumer density relative to maximum use of the system, fair rate of return, failure to apply to the PUC for rate increases and all other matters presented relative thereto; that in determining anticipated growth in earnings the board considered prospective growth of the area and the history of growth of the system in number of customers, area and consumer density; that (paragraph V) the board also considered historical cost, reasonable depreciation, extent of use and status of ownership of the physical plant.

The board specifically found "VI The assessor used, in valuing this system, a method of valuation which started from historical cost, with due allowance for depreciation"; that (VII) this is the same method

In October 1962 plaintiff noticed a motion to vacate and annul the board's findings and order, or, in the alternative, for an order setting the case for retrial on the valuation issue. A hearing was held on November 30, at which the court had before it the minutes of the board (fn. 2, *ante*), as well as an affidavit of plaintiff's counsel setting forth the evidence presented to the board at the August hearing. The affidavit stated that plaintiff's evidence (substantially identical with that presented by plaintiff at the previous trial) showed that the valuation should be based upon capitalization of earnings and earning power, that plaintiff's earnings are limited by the policies and practices of the PUC, and that the value of the property is $100,000 to $150,000. Attached to the affidavit was a statement of the county assessor (which had been presented to the board) declaring that the assessor had considered replacement cost less depreciation, as well as sales analysis and capitalized earning ability of the property; the statement contained information as to the sale of another water company at $373 per service connection which if applied to plaintiff's situation would have resulted in a price of $516,575; it showed a rate differential of 53 percent in favor of plaintiff's consumers as compared with those of another similar water company; it contained a ''Summation Approach,'' setting forth the valuation method originally used by the assessor, including a statement that ''This method indirectly recognizes income in that the absence of income sufficient to support the full cost resulted in an additional 40 per cent discount from the normal''; and it contained a calculation of value based upon capitalization of anticipated income on a net income average over a three-year period, making allowance for only partial use of plaintiff's facilities.

Following the November 30 hearing the court denied plaintiff's motion in toto. Its written order relates among other things that testimony at the first trial indicated that the board had received no evidence supporting its first order con-

used ''in valuing all of the hundreds of water systems in this County''; that (VIII) the assessor's method ''contained a just and proper allowance for low density of consumers . . . which effectually gave adequate weight to earning power . . . and such method was . . . proper''; that (IX) the assessor's valuation was fair, just and accurate for the two years involved in this action, but that for the year 1962-1963 (also considered by the board in the same proceeding) the assessor had made an inadequate allowance for low consumer density and for that year the assessment was accordingly reduced.

firming the assessor's valuations, that the court had noted that defendant had not considered earning power and so had used an erroneous and improper valuation method, that at the second board hearing evidence of earnings and earning power was received and considered. The order contains findings that at the second board hearing earning power was considered, that in the reassessment the board found fair assessed value based upon market value, that despite the same result the board did not use the same method of valuation it had used before, that the board had fully complied with the court's earlier judgment, and that the court's special retention of jurisdiction should be terminated.

On appeal plaintiff contends that the board in fixing the same valuation in the reassessment proceedings actually used the same *method* of valuation and so exceeded its jurisdiction, and that in any event the reassessments are invalid under the principle of res judicata. These contentions are without merit.

As just noted, the court's order points out and plaintiff does not dispute that at the second board hearing evidence was received in support of the method followed by the board as set forth in its minutes (fn. 2, *ante*), including evidence of plaintiff's earnings and earning power. Moreover, as the court specifically found, at the second hearing the board gave consideration to plaintiff's earning power in equalizing the assessed valuations of plaintiff's property. The court appears correct in its determination that the board thus employed a different, and approved, method of valuation and had complied with the court's earlier judgment.

Further, no prejudice to plaintiff seems to be shown. Although when this matter was pending in the trial court plaintiff referred to its rights in the pipelines as "flow rights," it concedes in its brief on appeal that the value of its rights is the same as the value of the lines themselves. No reason appears why the lines should not be valued and assessed under the same methods applied to other like tangible property. Also, since there is no suggestion that the lines are held in tax-exempt ownership the assessor would not customarily assess the possessory interest in the lines separately from the lines themselves. (See *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 563 [10-11] [290 P.2d 544].) Thus there is no merit in plaintiff's argument that its rights in the lines should be valued by means of the

capitalization of income method approved in *De Luz* for the assessment of taxable possessory interests in land held in tax-exempt fee ownership.

 *Guaranty Liquidating Corp.* v. *Board of Supervisors* (1937) 22 Cal.App.2d 684 [71 P.2d 931], cited by plaintiff in support of its argument that under the principle of res judicata the board was precluded from reassessing the property at the same amount, following the second board hearing, is not persuasive. Two separate lawsuits were there involved rather than, as here, supplemental proceedings over which the court retained jurisdiction and thereafter determined that the board had complied with the court's directions.

The orders appealed from are affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Mosk, J., concurred.